IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES & NATIVE ECOSYSTEMS COUNCIL,<br><br>Plaintiff,<br>v.<br><br>ANGELITA BULLETTS, in her official capacity as Forest Supervisor for the Dixie National Forest; UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture,<br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 2:13-cv-00715-BCW<br><br>Magistrate Judge Brooke C. Wells |

Before the Court is Plaintiffs' Alliance for the Wild for the Rockies and Native Ecosystems Council (hereinafter collectively referred to as "Plaintiffs") Motion for Preliminary Injunction.[1] Oral argument on this motion was held on June 11, 2015, at which time attorney Dana M. Johnson appeared on behalf of Plaintiffs and attorney Alison D. Garner appeared on behalf of Defendants Angelita Bullets and the United States Forest Service (hereinafter collectively referred to as "Defendants"). Prior to the hearing the Court carefully considered the current procedural posture of this case and the memoranda submitted by the parties. Since taking the matter under advisement,[2] the Court has further considered relevant case law and the facts related to this motion. For the reasons stated more fully below, the Court DENIES Plaintiff's Motion for Preliminary Injunction.

---

[1] Docket no. 41.
[2] Docket no. 45.

## BACKGROUND

This case involves Plaintiffs' challenge to the Defendants' implementation of the "Iron Springs Project" ("Project") in the Dixie National Forest. The Project area consists of 8,306 total acres on the Aquarius Plateau. Through this project, Defendants have authorized roughly 4,890 acres of logging. In conjunction with the logging activities, road construction and maintenance activities on 36.16 miles of existing forest roads and 9.61 miles of new, temporary forest roads have been authorized.

According to Plaintiff, the Project will impact old growth ecosystems, degrade habitat, and impact habitat dependent species. On the other hand, Defendants contend these vegetation management activities are "designed to help restore the health and resilience of spruce and fir stands by decreasing stand densities in order to reduce susceptibility to insect infestation and to sustain large-diameter trees."[3] Defendants have also argued that these activities will reduce the danger of fire and create local jobs related to the logging activities.

Through their Complaint and briefs on the Administrative Record, Plaintiff challenged "(1) the Forest Service's failure to prepare an Environmental Impact Statement ("EIS") for the Project where several of the regulatory factors that would trigger the need for an EIS are implicated, (2) the Forest Service's tiered analysis to the Northern Goshawk Project Forest Plain Amendment where the Amendment had an expired and otherwise deficient NEPA analysis, and (3) the Forest Service's failure to use the best available science, failure to take a hard look at Project activities on Forest Management Indicator and Sensitive species, and failure to ensure the viability of Forest Management Indicator and Sensitive species."[4]

---

[3] Def.'s Opp. Br. to Mot. for Prelim. Injunction., docket no. 43 at p. 4.
[4] Pl.'s Mot. for Prelim. Injunction, docket no. 41 at p. 3.

The Plaintiffs' underlying administrative appeal has been fully briefed by the parties[5] and the Court has heard oral argument and taken the matter under advisement.[6] In the meantime, Defendants wish to begin ground disturbing and/or logging activities on the project area. Specifically, Defendants have given Plaintiffs notice that they are about to commence work on the "Sink Hole Sale." The Sink Hole Sale was advertised in August, 2013 and the contractor bid on and was awarded the project that same year. However, after Plaintiffs filed this lawsuit, the contractor has focused on other contracts outside the project area.

At oral argument and in its brief, Defendants asserted that the Sink Hole Sale is anticipated to be a three-year project beginning each year on or around June 1st. However, due to recent record rainfall, ground conditions this year are not dry enough for implementation efforts for the Sink Hole Sale until near the end of June. Operations are set to cease on or about October 31st of each year. The Sink Hole Sale project area encompasses about 815 acres or approximately 15-20% of the entire Iron Springs Project. Approximately two miles of temporary roads will be constructed and then obliterated for the Sink Hole Sale.

## ANALYSIS

A plaintiff seeking a preliminary injunction must satisfy four elements: (1) likely success on the merits, (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in the movant's favor, and (4) that an injunction is in the public interest.[7]

In addition, in *Monsanto v. Geertson Seed Farms*, the Supreme Court emphasized that [i]t is not enough for a court considering a request for injunctive relief to ask whether there is a good

---

[5] Docket nos. 30, 31 and 35.
[6] Docket no. 38.
[7] *See Winter v. Natural Resources Defense Council*, 129 S.Ct. 365, 374 (2008).

reason why an injunction should *not* issue; rather, a court must determine that an injunction *should* issue under the traditional four-factor test set out above."[8]

The Tenth Circuit has emphasized that it "consider[s] a preliminary injunction to be an extraordinary remedy, and caution[s] courts against granting injunctions that alter the status quo or that require the "nonmoving party to take affirmative action—a mandatory preliminary injunction—before a trial on the merits occurs."[9] Therefore, "[b]ecause mandatory preliminary injunctions are disfavored, before a district court may grant such relief, the movant must make a heightened showing of the above four factors."[10] "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'[11] 'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing...[an] injunction.'"[12]

The Court will address and closely scrutinize each of the four factors in turn "…to assure that the exigencies of the case support the granting of the motion" while keeping in mind that injunctions must not be granted without heightened consideration.[13]

### A. Substantial Likelihood of Success

At the outset, the Court notes that it is well aware that this case presents issues related to the environment and that by its very nature, any potential injury to the environment that results from denying Plaintiff's Motion for Preliminary Injunction may cut against Plaintiff's potential

---

[8] 130 S.Ct. 2743, 2757 (2010).
[9] *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009)(internal citations omitted).
[10] *Id.*
[11] *Winter*, at 376 (internal citations and quotations omitted).
[12] *Id.* at 376-77.
[13] *Roda Drilling Company v. Siegal,* 552 F.3d 1203, 1209 (10th Cir. 2009).

success on the merits of the underlying appeal. However, as Plaintiff conceded at oral argument, courts have recognized that injunctions in environmental cases do not automatically issue.[14]

Keeping that in mind, the Court is candidly reluctant to find at this juncture that Defendants have a substantial likelihood of succeeding on the merits before issuing a final decision. At the same time, the Court is cognizant of the high burden Plaintiffs are tasked with overcoming through their administrative appeal. Under the Administrative Procedure Act, the Court shall "….set aside" an agency's decision if it is "arbitrary, capricious…or otherwise not in accordance with law" or if it was issued "without observance of procedure required by law."[15]

Therefore, at a minimum the Court finds "questions going to the merits are so serious, substantial, difficult and doubtful as to make the issue and deserving of more deliberate investigation."[16] However, having had the benefit of reviewing the briefs and hearing oral argument in the underlying appeal, which may not be typical in these types of cases, where injunctions may be filed in advance of full briefing and oral argument, the Court finds that Defendants have shown a substantial likelihood of succeeding on the merits. Again, the Court reiterates that it has not made a final decision on the merits and its decision with regard to the injunction does not in any way forecast what is to come shortly in its decision in the underlying appeal. Therefore, for purposes of the four injunction factors and the extraordinary nature of injunctive relief, the Court finds Defendants have demonstrated a substantial likelihood of success on the merits.

---

[14] *See Monsanto* at 2757 ("An injunction should issue only if the traditional four-factor test is satisfied. In contrast, the statements quoted above appear to presume that an injunction is the proper remedy for a NEPA violation except in unusual circumstances. No such thumb on the scales is warranted. Nor, contrary to the reasoning of the Court of Appeals, could any such error be cured by a court's perfunctory recognition that 'an injunction does not automatically issue' in NEPA cases.")
[15] 5 U.S.C. § 706 (A),(D).
[16] *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1255-56 (10th Cir. 2003)(The Court notes this is a pre-*Winter* decision).

### B. Irreparable Harm

In the 10th Circuit, "to constitute irreparable harm, an injury must be certain, great, actual, and not theoretical."[17] "In determining whether a plaintiff has made the requisite showing, [Courts] further assess whether such harm is likely to occur before the district court rules on the merits."[18]

Upon review of the relevant facts, the Court finds Plaintiffs have not presented sufficient evidence to sustain its claim of irreparable harm. Plaintiffs have asserted that any ground disturbing activities will harm wildlife, destroy habitat, and disturb and/or ruin ecosystems. But Plaintiffs have failed to sufficiently demonstrate or quantify the magnitude of the damage that will occur before the Court issues its opinion on the merits.

In addition, the Court agrees with Defendants that Plaintiff's arguments seem to focus on the project *as a whole*—not specifically on the harm that may be caused by the Sink Hole Sale. Plaintiffs have not demonstrated or provided the Court will any specific findings, estimates or figures as to numbers of wildlife that will be disturbed and/or affected in this small portion of the overall project area.

On the other hand, Defendants have asserted that the species Plaintiffs seem to be most concerned about in their underlying appeal are not largely present in the Sink Hole Sale project area. According to Defendants, Goshawks are not active in the Sink Hole area and there are no prairie dogs present. Further, Defendants direct the Court back to their underlying arguments with regard to the overall project area and assert that the Forest Service's habitat protections built into the Iron Springs Project exceed the recommendations to adequately protect wildlife.

---

[17] *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)(internal citations and quotations omitted).
[18] *Roda* at 1210 (internal citations and quotations omitted).

Thus, the Court finds Plaintiffs have failed to demonstrate that potential implementation of a small portion of the Project pending the Court's resolution of the case on the merits will cause irreparable harm.

### C.  Balance of Harms

The Court agrees with Defendants that the balance of harms tips in the Defendants' favor. Plaintiffs have not made the requisite showing that they will succeed on the merits or be irreparably harmed by implementation of the Sink Hole Sale.  In addition, the Court finds it significant that the sale area comprises only a small fraction of the Iron Springs Project as a whole (roughly 15-20% of the total project area).   Further, as discussed below, Plaintiffs have failed to demonstrate that the public interest is in their favor.  Therefore, the Court finds the balance of harms tips in favor of Defendants.

### D.  Public Interest

In addition to distinguishing other cases, Plaintiffs' argue violation of environmental laws, coupled with on-the-ground implementation of activities is certainly not within the public interest. Plaintiffs also argue they have an interest in protecting and enjoying the Sink Hole Sale project area.

Conversely, Defendants argue that the public interest favors denying Plaintiffs' injunctive relief because this important forest health project would be delayed and Defendants will suffer financial harm if the Project is enjoined.  Defendants further contend that the salvage value of the timber in the area will be decreased and they will be exposed to potential contract damages as a result of an injunction.  In addition, "an injunction would harm the public interest by allowing the beetle infestation to worsen within the Project area, and maintaining fuel loads above

appropriate conditions [will create] an increased risk of catastrophic fire." Lastly, Defendants assert, the Sink Hole sale will provide additional work for the local sawmill and logging workers.

The Court is persuaded by Defendants' arguments, especially with regard to continued beetled infestation and the potential for fire damage. The Court finds that the public at large's interests are more in line with the Defendants' arguments rather than the position taken by Plaintiffs with respect to the injunctive relief. Therefore, this factor weighs in Defendants' favor.

## **CONCLUSION & ORDER**

For the foregoing reasons, Plaintiffs have not adequately demonstrated that they can meet the heightened standards required in assessing the four factors for a preliminary injunction. Accordingly, a preliminary injunction is not warranted in this case. Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Injunction is DENIED.

DATED this 13 June 2015.

Brooke C. Wells
United States Magistrate Judge